# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ALEXANDER ADORNO, | : | |
| Plaintiff, | : | CASE NO. 3:16-cv-325 (MPS) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | DECEMBER 28, 2016 |
| | : | |

---

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Alexander Adorno, currently incarcerated at the Garner Correctional Institution in Newtown, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983.  By Initial Review Order filed March 8, 2016, the Court determined that the case would proceed on claims for deliberate indifference to medical and mental health needs, supervisory liability, use of excessive force, failure to protect and deliberate indifference to safety, denial of due process and equal protection, negligence, assault and battery.  (*See* ECF No. 7 at 5.)  The defendants move to dismiss on several grounds.  For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## I.   Facts

The plaintiff alleges the following facts.  The incidents underlying this action occurred while the plaintiff was confined at Corrigan Correctional Institution ("Corrigan").  Upon his arrival at Corrigan on August 24, 2015, the plaintiff informed staff that he was a transgender inmate and had been sexually abused in the past by other inmates.  He requested a single cell or a

cellmate who was transgender or homosexual.

Between August 24, 2015, and September 21, 2015, the plaintiff was housed with two cellmates.  Neither was transgender or homosexual.  The plaintiff told defendant Iozzia that he feared for his safety.  Defendant Iozzia told him to stop complaining and threatened to transfer the plaintiff to restrictive housing.  The plaintiff informed defendants Santiago and Martin as well as Supervisors John Doe #1 and #2 of his concerns.

On September 21, 2015, the plaintiff began "to have mental health issue[s]" and believed that the correctional staff and inmates were going to kill him because he was transgender.  (ECF No. 1 at 6.)  He smeared feces all over his body.  As a result, the plaintiff was transferred to restrictive housing and placed on suicide watch.  "During this time for a period of 8 hours [the plaintiff's] body was covered in feces."  (*Id*.)  Defendant Ayotte taunted the plaintiff by repeatedly calling him a "shitty fag."  (*Id*.)

On October 12, 2015, defendant Ayotte began swearing at the plaintiff.  When the plaintiff asked him to stop, he told the plaintiff to shut up and continued harassing him. Defendant Ayotte ordered the plaintiff to go to the sally port.  In the sally port, defendant Ayotte ordered the plaintiff to give him the plaintiff's cup of coffee.  When the plaintiff refused, defendant Ayotte tried to take the cup of coffee away.  In response, the plaintiff stated that defendant Ayotte could not use force against him without a supervisor present.

Instead of summoning a supervisor, defendant Ayotte called defendant Olson to the sally port.  When defendant Olson arrived, they began assaulting the plaintiff.  At no time was the plaintiff combative.  Defendant John Doe #3 watched the incident on the camera.  Instead of summoning defendant supervisors John Doe #1 and #2 and telling them that the plaintiff was

being assaulted, he called a code orange.  By calling a code orange, defendant Doe #3 was

signaling that the plaintiff had assaulted staff.  Defendant Doe #3 knew that the plaintiff was the

victim of the assault, but falsified the report to cover up for defendants Ayotte and Olson.  As a

result of the assault, the plaintiff suffered injuries to his face, hands, head, and ribs.  Defendant

Nurse John Doe #4 saw the plaintiff after the assault but did not provide any medical care or

treatment and falsified medical reports.

Defendant supervisors Doe #1 and #2 refused to permit the plaintiff to contact the

Connecticut State Police and file a complaint against defendants Ayotte and Olson.  Defendants

Semple, Santiago, Martin, and Supervisors Doe #1, #2, and #5 failed to investigate the incident.

Defendants Semple, Santiago, and Martin failed to create a policy to deal with transgender

inmates and failed to train staff to deal with medical and mental health issues and the protection

of transgender inmates.

The plaintiff identifies five claims for relief: (1) Defendants Semple, Santiago, and

Martin were deliberately indifferent to his safety by failing properly to train Defendants Ayotte

and Olson in dealing with transgender inmates and to create policies to protect these inmates

(Count One); (2) Defendant Doe #4 was deliberately indifferent to the plaintiff's serious medical

needs by failing to provide any treatment for his injuries and Defendants Santiago, Martin, and

Supervisors Doe #1 and #2 failed to ensure the medical treatment was provided (Count Two); (3)

Defendant Iozzia was deliberately indifferent to the plaintiff's mental health needs by failing to

ensure that he was housed with a transgender or homosexual inmate, thereby causing the plaintiff

to have a mental break-down (Count Three); (4) Defendants Martin, Santiago, Semple, and

Supervisor Does #1, #2 and #5 failed to protect the plaintiff from assault by Defendants Ayotte

3

and Olson (Count Four); (5) Defendants Santiago, Martin, and Supervisors Doe #1, #2 and #5 denied the plaintiff due process and equal protection by denying him his right to contact the Connecticut State Police and failing to enact a policy to protect transgender inmates (Count Five).  In the introductory section, the plaintiff asserts state tort claims for negligence and assault and battery, and the Court previously construed his complaint also to assert claims of excessive force against Defendants Ayotte and Olson and a failure-to-protect claim against Defendant Doe #3.  (ECF No. 7 at 4.)

## II.    Standard

When reviewing a motion to dismiss, the court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000).  The court need not, however, accept conclusory allegations.  The case should proceed only if the complaint alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554-55).  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679).  Even under this standard, however, the court liberally construes a *pro se* complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008).

## III.    Discussion

The defendants move to dismiss on the grounds that all negligence claims against state employees are precluded by state law; any injunctive relief is moot; the defendants are protected

4

from an award of damages against them in their official capacities by the Eleventh Amendment; the complaint fails to plead facts showing personal involvement by defendants Semple, Santiago, and Martin in the incidents alleged; the complaint fails to state a cognizable due process or equal protection claim; and the plaintiff has not alleged any serious medical needs to support his deliberate indifference claim, identified the Doe defendants alleged to have been deliberately indifferent to his medical needs, or alleged sufficient facts to show that defendant Iozzia was aware of his mental health needs.

In opposition to the motion to dismiss, the plaintiff has filed a memorandum along with several exhibits.  In the memorandum, the plaintiff cites his exhibits to challenge some of the statements in defendants' memorandum.  When considering a motion to dismiss under Rule 12(b)(6), the Court considers only the allegations in the complaint and matters of which judicial notice may be taken.  *See Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012).

If the Court were to consider the plaintiff's exhibits, it would be required to convert the Rule 12(b)(6) motion to dismiss to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d) (providing that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment…").  The Court declines to do so. Accordingly, the Court will consider only the allegations in the complaint and matters of which it may take judicial notice when it reviews the motion to dismiss under Rule 12(b)(6).

A.     Official Capacity Claims for Damages

The defendants move to dismiss all claims for damages against them in their official capacities.  Examination of the complaint shows that the defendants are named in individual

5

capacity only.  (*See* ECF No. 1, ¶ 15 ("All named defendants … are being sued in their individual capacities."))  As no defendant is named in official capacity, the motion to dismiss on this ground is denied as moot.

    B.    Negligence

    Arguably in Count One and, more expressly, in Count Four, the plaintiff accuses defendants Semple, Santiago, and Martin of negligence.  (Compl. ¶ 37 ("The failure of … Semple, Santiago, Martin … to … properly train defendant[s] Ayotte and Olson in dealing [with] transgender inmates and their knowledge of the substantial risk [of] serious harm [posed] by these defendants Ayotte and Olson to the plaintiff violated the plaintiff['s] eighth amendment right to be free from deliberate indifference to his safety."); *id.* p. 11 & ¶ 42 ("Ne[g]ligent Failure to Protect.  ¶ 42.  Defendants' Martin, Santiago, Semple … owed the plaintiff a duty of reasonable care to protect [] him from assault by … Ayotte and … Olson …."))  Thus, at least part of Count One and all of Count Four appear to be based on theories of negligence.  The defendants move to dismiss all claims based on negligence.

    Negligence is not cognizable under section 1983.  *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *see also Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2001) ("[M]ere negligence is insufficient as a matter of law to state a claim under section 1983").  Thus, any Section 1983 claims based on negligence, which, as noted, include part of Count One and all of Count Four, are dismissed.  In addition, any state law negligence claim would be barred by state statute.  Connecticut General Statutes §4-165 provides:  "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment."  All of the actions allegedly taken by the

6

defendants were within the scope of their employment.  Thus, they are protected from an award of damages against them in their individual capacities by state law.  The defendants' motion to dismiss is granted as to all negligence claims.

      C.    <u>Failure to Protect</u>

Count One can also be construed to allege a more culpable state of mind.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("We review the sufficiency of Boykin's pleadings mindful of this duty to construe more liberally her *pro se* complaint.").  Specifically, the plaintiff alleges that defendants Semple, Santiago, Martin, as well as Supervisors Doe #1, #2, and #5, had "knowledge of [a] substantial risk of serious harm" by defendants Ayotte and Olson.  (Compl., Count One ¶ 37.)  But as defendants point out, without more, this allegation is conclusory, and the plaintiff fails to plead anything more.  He pleads no facts suggesting that Semple, Santiago, or Martin – or any of the John Doe Supervisors – was aware of a "substantial risk" that Ayotte and Olson would assault him.   He does not allege, for example, that any of these defendants were present in the housing unit on October 12, 2015, or that they observed the behavior preceding defendant Ayotte's order directing the plaintiff to go to the sally port.

Prison officials have a duty to make reasonable efforts to ensure inmate safety.  This duty includes protecting inmates from harm at the hands of other inmates.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).  To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety.  *See Farmer*, 511 U.S. at 834.  Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety.  *See id.* at 837; *Bridgewater v. Taylor*, 698 F.

Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts

supporting an inference that harm would occur and must actually draw that inference).  For

example, correctional staff would be on notice of a substantial risk of serious harm where there

was prior hostility between inmates, or a prior assault by one inmate on another, and those

inmates were not kept separated.

Although the plaintiff alleges that he informed the defendants about his fear of sexual

assault by other inmates, he does not allege facts suggesting that he expressed any fears of

assault by correctional staff. Because the plaintiff fails to allege facts suggesting that defendants

Semple, Santiago, Martin, and Supervisors Doe #1, #2, and #5 were aware of any risk of harm by

defendants Ayotte and Olson, he fails to state a plausible failure to protect claim.  The

defendants' motion to dismiss is granted as to this claim.

D.    Deliberate Indifference to Medical Needs

In Count Two, the plaintiff alleges that defendant Doe #4 refused to treat his injuries

following the assault by defendants Ayotte and Olson and that defendants Santiago, Martin, and

Supervisors Doe #1 and #2 failed to ensure that he received proper medical care "despite their

knowledge of plaintiff's serious injuries/medical needs."  (ECF No. 1 at 11.)

To state a claim for deliberate indifference to a serious medical need, the plaintiff must

show both that his medical need was serious and that the defendants acted with a sufficiently

culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*

*v. Gamble*, 492 U.S. 97, 104 (1976)).  Thus, the deliberate indifference standard includes both an

objective prong and a subjective prong.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.

1994). Objectively, the alleged deprivation must be "sufficiently serious."  *Wilson v. Seiter*, 501

8

U.S. 294, 298 (1991).  The condition must produce death, degeneration, or extreme pain.  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  When determining the seriousness of an inmate's injuries, the court considers several factors including:  (1) whether the injury is one that a reasonable doctor would find important and worthy of treatment; (2) whether the injury significantly affects the inmate's daily activities; and (3) whether the injury produces chronic and substantial pain.  *See Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

The plaintiff alleges that he suffered injuries to his face, hands, head, and ribs as a result of the assault.  The defendants argue that such injuries do not rise to the level of a serious medical need.  Although courts have rejected deliberate indifference claims for injuries sustained in an assault that might cause immediate pain and warrant some treatment but not affect an inmate's activities of daily living or result in chronic and substantial pain, those courts have considered the issue on summary judgment with more specific information on the injuries.  *See, e.g., Dallio v. Hebert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (citing cases indicating that cuts, bruises, and similar injuries accompanied by pain do not amount to a condition that might produce death, degeneration, or extreme pain or otherwise constitute a serious medical need); *Goldston v. Albany County Sheriff Dep't*,  No.9:02-CV-1004, 2006 WL 2595194, at *6-7 (N.D.N.Y. Sept. 11, 2006) ("vast majority of" injuries suffered in four assaults consisting mainly of lumps, bumps, bruises, abrasions, scratches, minor cuts, and temporary pains that healed within a few days, considered alone or in combination, were not sufficiently serious for

9

constitutional purposes).

The plaintiff does not provide any information on the exact injuries suffered.  Accepting

his allegations as true, as the Court must when reviewing a motion to dismiss, the Court

concludes that it is possible that the plaintiff suffered injuries constituting a serious medical

need.  He alleges that defendant Doe #4 refused to treat his injuries.  Thus, he has stated a

plausible deliberate indifference claim with regard to defendant Doe #4.  The defendants' motion

to dismiss is denied as to the deliberate indifference claim regarding defendant Doe #4.

The plaintiff also alleges that defendants Santiago, Martin, and Supervisors Doe #1 and

#2 failed to ensure that he received proper medical care.  These defendants are supervisory

officials.  To state a claim for supervisory liability, the plaintiff must demonstrate one or more of

the following criteria:  (1) the defendant actually and directly participated in the alleged actions,

(2) the defendant failed to remedy a wrong after being informed of the wrong through a report or

appeal, (3) the defendant created or approved a policy or custom that sanctioned objectionable

conduct which rose to the level of a constitutional violation or permitted such a policy or custom

to continue, (4) the defendant was grossly negligent in his supervision of the officers who

committed the constitutional violation, or (5) the defendant was deliberately indifferent to the

plaintiff's rights by failing to act in response to information that unconstitutional acts were

occurring.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).[1]  The plaintiff also must

---

[1] The defendant argues that *Iqbal* effectively eliminated several of these categories of
liability, but the Second Circuit has not so held and district courts within the Circuit continue to
debate the issue.  *See, e.g., Doe v. New York*, 97 F. Supp.3d 5, 12 (E.D.N.Y. 2015).  I need not
join that debate in this case, because plaintiff's allegations fail to state a plausible claim that
would fall in any of these categories.

demonstrate a causal link between the actions of the supervisory official and his injuries.  *See*

*Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

The plaintiff alleges no facts suggesting that any of these supervisory officials were aware that defendant Doe #4 had refused to provide the plaintiff with medical attention.  He also alleges no facts suggesting that he was unable to submit a request to be seen at sick call for his injuries.  As the plaintiff alleges no facts supporting a claim under any of the above criteria, the defendants' motion to dismiss the deliberate indifference claim is granted as to defendants Santiago, Martin, Doe #1, and Doe #2.

E.     Deliberate Indifference to Mental Health Needs

The plaintiff contends that defendant Iozzia was deliberately indifferent to his mental health needs in violation of the Eighth Amendment because he failed to ensure that the plaintiff was housed with other transgender inmates, and this failure led the plaintiff to suffer a mental breakdown.  Defendants argue that the plaintiff fails to plead sufficient facts to support this claim.  (ECF No. 18-1 at 12.)  The Court agrees.

The sum total of plaintiff's factual allegations regarding defendant Iozzia are that Iozzia was a lieutenant at Corrigan who, after being advised by plaintiff that he feared for his safety due to his placement in a cell with inmates who were not transgender or gay, told plaintiff that he would be placed in segregation if he did not stop complaining.  (ECF No. 1 at ¶ 18.)  Construing these allegations in the plaintiff's favor, the Court finds that plaintiff has also alleged that Iozzia was aware that the plaintiff was transgender, that he had been sexually abused in the past by other inmates, that he was genuinely in fear of his safety, and that this fear was causing him enough consternation that he repeatedly complained about his housing situation.  Even under

11

this generous construction, the plaintiff's allegations against defendant Iozzia fall short of stating a claim for deliberate indifference to mental health needs.   First, there is no allegation that the plaintiff exhibited signs of a mental breakdown before September 21, 2015, or that Iozzia was present at Corrigan that day or otherwise learned that the plaintiff was covering himself with feces.   Second, there is no allegation that the plaintiff had a history of mental health issues or, if he did, that Iozzia was aware of that history.   The plaintiff's allegations suggest that, had he been attacked by another inmate due to being transgender, Iozzia would have been on notice of such an attack and would have failed to protect the plaintiff from harm.   But the plaintiff alleges no such attack, and makes no failure-to-protect claim against Iozzia.   The existing factual allegations against Iozzia do not suggest that the plaintiff showed signs of a sufficiently serious mental health condition before September 21, 2015.   There are, for example, no allegations that between August 24, 2015, and September 21, 2015, the plaintiff exhibited signs of deteriorating mental health that "significantly affect[ed] [his] daily activities" or that would have prompted a reasonable doctor or patient [to] find important."   *Salahuddin*, 467 F.3d at 280.   Nor are there any allegations suggesting that defendant Iozzia was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to the plaintiff's mental health] exist[ed]" or that he actually "dr[e]w the inference."   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hernandez-Arredondo v. Hollingsworth*, 2011 WL 26499995 *6 (S.D. Ill. July 6, 2011)("Plaintiff fails to allege any action or behavior on his part that could have put the defendants on notice that he had a serious mental health condition requiring some evaluation or treatment.   Therefore, it does not appear that the defendants had actual knowledge of facts from which could infer the potential for serious harm to Plaintiff ....")   The plaintiff's claim against

12

Iozzia – Count Three – is therefore dismissed.

      F.     <u>Due Process and Equal Protection</u>

In Count Five, the plaintiff claims that defendants Semple, Santiago, and Martin violated his due process and equal protection rights by not having a policy to treat transgender inmates and non-transgender inmates equally, and that defendants Santiago, Martin, and Supervisors Doe #1, #2, and #5 violated the same rights by not permitting him to contact the Connecticut State Police to file a criminal complaint. The Defendants argue that the plaintiff has failed to plead facts to support these claims.  The Court agrees.

The plaintiff generally references the Due Process Clause and the Equal Protection Clause.  To state a claim for denial of due process, the plaintiff must show that he had a protected liberty interest and, if he has such an interest, that the defendants deprived him of the interest without affording him due process of law.  *See Sandin v. Conner*, 515 U.S. 472 (1995). The plaintiff has a protected liberty interest only if the State created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  *See Tellier v. Fields,* 280 F.3d 69, 81 (2d Cir. 2000).

The Equal Protection Clause protects prisoners from invidious discrimination.  This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).  To state an equal protection claim, the plaintiff must allege facts showing that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure

a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  The plaintiff also could assert an equal protection claim based on a "class of one" theory.  To state a valid claim, the plaintiff must allege first that he was intentionally treated differently from others who are similarly situated.  Second, he must allege facts showing that there is no rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  He must allege an "extremely high" level of similarity with the person to whom he is comparing himself; the comparator's circumstances must be "prima facie identical."  *Neilson v. D'Angelis*, 409 F.2d 100 (2d Cir. 2005), *overruled in part on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008).

First, the plaintiff's allegation regarding prison policy is incorrect.  The Court takes judicial notice of Department of Correction Administrative Directive 9.3, effective July 20, 2015.  Section 5.J of that directive provides:

> PREA Screening of Newly Admitted Inmates.  Each newly admitted inmate shall ordinarily during intake processing, unless exigent circumstances exist, then not more than 72 hours after admission, be screened by a staff member for risk of sexual victimization or sexually abusive behavior while incarcerated.  Information obtained as a result of this screening process shall be used to enhance decision making regarding housing assignments, possible medical/mental health treatment, program, work and education assignments.  Separation of inmates that are identified as being at significant risk of sexual victimization or abusiveness from other inmates may be required.  The above referenced screening shall be documented on Attachment B—Intake Health Screening (HR-001) and CN 9306 Inmate Intake Form.

www.ct.gov/doc (last visited Dec. 14, 2016).  As this policy was in place at the time of the incidents giving rise to the complaint, any claim based on the failure to have such a policy is

dismissed.  Second, the plaintiff does not compare himself to any other similarly situated inmates who were treated differently.  Thus, any equal protection claims are without merit.

The plaintiff makes no allegations to support his due process claim.  His claim that he was not permitted to contact the Connecticut State Police to file a criminal complaint is not actionable.  "There is no constitutional right to an investigation or arrest of an individual who has committed an assault upon a prisoner unless the omission or inadequacy of the investigation itself resulted in the deprivation of a constitutional right."  *Malloy v. City of New York*, No. 93 Civ. 8919(SS), 1996 WL 648927, at *2 (S.D.N.Y.  Nov. 7, 1996) (Sotomayor, D.J.) (citing cases).  In addition, any phone restrictions imposed on inmates rise to the level of a constitutional violation only if the inmate also is deprived of all other methods of communication.  *See, e.g., Huggins v. Schriro*, No. 14-CV-6468 (GBD)(JLC), 2015 WL 7345750, at *9 (S.D.N.Y. Nov. 19, 2015) (citing cases), *report and recommendation adopted by*, 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016).  The plaintiff does not allege that he was unable to write to the Connecticut State Police.  Thus, any Fourteenth Amendment claim based on an inability to make a telephone call is without merit.  Count Five is dismissed.

      G.    <u>Deliberate Indifference to Safety</u>

The plaintiff alleges that defendant Doe #3 was deliberately indifferent to his safety when he witnessed the assault by defendants Ayotte and Olson but called a code indicating that the plaintiff has assaulted correctional staff instead of summoning a supervisor to assist the plaintiff.  The plaintiff also alleges that Ayotte and Olson used excessive force against him and committed common law torts of assault and battery.  The defendants have not addressed these claims, and they remain pending.

**IV.** **Conclusion**

As set forth above, Defendants' motion to dismiss [ECF No. 18] is GRANTED in part and DENIED in part.   The case will proceed on the claim for deliberate indifference to medical needs against defendant Doe #4, the excessive force claims against defendants Ayotte and Olson, and the deliberate indifference to safety claim against John Doe #3.  The Clerk is directed to terminate defendants Semple, Santiago, Martin, Iozzia, Doe #1, Doe #2, and Doe #5 from this case.

The plaintiff is directed to file an amended complaint including only the remaining claims and identifying defendants Doe #3 and Doe #4.  The plaintiff shall file the amended complaint within thirty (30) days from the date of this order.  Failure to do so will result in the dismissal of all claims against defendants Doe #3 and Doe #4.  In light of this order and the Court's earlier orders, and because the additional information obtained in discovery about the arrest of defendants Ayotte and Olson relates to claims against those defendants that remain in the case, the plaintiff's motion for reconsideration [ECF No. 25] is DENIED as moot.

SO ORDERED this 28th day of December 2016 at Hartford, Connecticut.

      /s/
      Michael P. Shea
      United States District Judge